CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JAN 2 2 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SCOTT SHIFFLETT, ) | |
| ) | Civil Action No. 7:06-CV-00404 |
| Petitioner, ) | |
| ) | 2255 MEMORANDUM OPINION |
| v. ) | |
| ) | By: Hon. James C. Turk |
| UNITED STATES OF AMERICA, ) | |
| ) | Senior United States District Judge |
| Respondent. ) | |

The matter is presently before the court on Respondent United States of America's Motion to Dismiss (Docket No. 12). Petitioner Scott Shifflett ("Shifflett"), a federal inmate initially proceeding pro se, brought this action pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§2255 Motion") (Docket No. 1). Following the United States' filing of its Motion to Dismiss, the court appointed Shifflett legal counsel and held an evidentiary hearing on October 23, 2008. The court then gave the parties seven days from the date of that hearing to submit additional argument. Based on the existing court record, memoranda submitted by the parties, and testimony presented at the evidentiary hearing, the court concludes that there is insufficient evidence to sustain Shifflett's claims of ineffective assistance of counsel. Accordingly, the United States' Motion to Dismiss (Docket No. 12) must be granted.

I.

Shifflett, along with multiple co-defendants, was indicted for conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Shifflett's wife, Stacy Shifflett, was one of the indicted co-defendants. The government extended a plea offer to Shifflett and his wife, which included the forfeiture of real

property. Both of the Shiffletts rejected the offer, deciding instead to proceed to trial with one other remaining co-defendant.

Following the parties' presentation of evidence at trial, a jury returned a guilty verdict against all three of the co-defendants, and the court sentenced Shifflett to 188 months of incarceration.[1] The jury further found that Shifflett and his wife were jointly liable for a money judgment in the sum of $150,000. On September 30, 2003, the parties came to an agreement on the forfeiture, and the court issued a preliminary order on January 16, 2004. On May 26, 2004, pursuant to 21 U.S.C. § 853(p), the court issued a final order of forfeiture providing for the forfeiture of certain real property as substitute assets in satisfaction of the $150,000 monetary judgment. On November 3, 2004, the court issued an order providing for the forfeiture of two real properties owned by Shifflett and his wife, which they forfeited as substitute assets to satisfy the $150,000 money judgment. The order also directed that any net proceeds realized in excess of the $150,000 money judgment be returned to Stacy Shifflett and/or her designee. The properties sold for a total sum of $186,572.56.

Shifflett now contends in his §2255 Motion that he received constitutionally ineffective assistance of counsel in preparation of and during his trial.[2] In particular, Shifflett claims that his trial counsel, Roy D. Bradley ("Bradley"), failed to advise him properly about his plea options and the likely outcome of a trial. According to Shifflett, Bradley simply instructed him "to not take the deal" offered by the United States because they had an "85% chance of winning at a trial." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence at 5; Pet'r

---

[1] The court later reduced this sentence to 132 months imprisonment, based on the United States Supreme Court's decision in U.S. v. Booker, 543 U.S. 220 (2005).

[2] Shifflett's original § 2255 Motion listed four grounds upon which he sought relief. By order entered June 13, 2007 (Docket No. 22), this court dismissed two of those claims relating to the forfeiture proceedings (Grounds Three and Four) for lack of subject matter jurisdiction.

Am. Mem. of Facts and Law at 4). Shifflett also claims that Bradley was constitutionally ineffective because he was inexperienced in federal trials. As evidence of this inexperience, Shifflett alleges that Bradley attempted to represent both Shifflett and his wife jointly, (Pet'r Am. Mem. of Facts and Law at 5), failed to "interview or contact [potential] witnesses to determine what facts or testimony they may have had to offer in presenting a defense," (Pet'r Am. Mem. of Facts and Law at 5), "refused to let [Shifflett] take the stand in [his] own defense," (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6), and failed to "present any defense on [his] behalf." (Pet'r Am. Mem. of Facts and Law at 5).

In an affidavit filed with the court, Bradley disputes these allegations. Bradley states that he "duly informed [Shifflett] of the pleas offered by the United States . . . [and] advised [him] of the strengths and weaknesses of the government's case." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). Bradley further claims that "as a matter of practice, not to mention ethical considerations," he never advises clients of the "specific percentages of winning," and in this case, he expressly warned Shifflett of the "likelihood of losing at trial." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). According to Bradley, Shifflett rejected the United States' plea offer not as a result of Bradley's advice, but rather because it "included the forfeiture of his real property." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). As to the inexperience claims, Bradley argues that he had "ample [f]ederal [c]ourtroom experience, consisting of at least [fifty] 50 [f]ederal cases and trials." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). Based on this experience, Bradley "strongly advised" Shifflett against taking the stand. (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). Bradley was particularly concerned about the United States' cross-examination of Shifflett and the likelihood that Shifflett would make damaging or perjurous statements. Nevertheless, Bradley maintains

3

that the "ultimate determination" as to whether Shifflett testified was "[Shifflett's] and [Shifflett's] alone." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)).

The United States relies on Bradley's affidavit to support its Motion to Dismiss. Bradley's account, however, varies markedly from Shifflett's sworn allegations. Therefore, the court held an evidentiary hearing on October 23, 2008, to resolve these factual disputes and to evaluate the credibility of various witnesses. At that hearing, the court heard testimony from Shifflett, Bradley, Stacy Shifflett, Roland Santos (Stacy Shifflett's court-appointed attorney for trial), and Sandra Ford (Stacy Shifflett's sister). The court also heard argument from the parties' respective counsel and granted an additional week for the submission of any further argument or authority.

## II.

To evaluate Shifflett's claims of ineffective assistance of counsel, the court relies on the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. Id. at 687. To satisfy the first prong, a habeas petitioner must show that his counsel's performance was deficient. Id. "Deficient performance" is not merely below average; rather, counsel's actions must fall below objective standards of reasonableness. Id. at 687, 688. In assessing an attorney's performance, judicial scrutiny must be "highly deferential" to tactical decisions, and the court must filter from its analysis the distorting effects of hindsight. Id. at 689. The first prong of Strickland necessitates a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Under the second Strickland prong, a petitioner must show that prejudice resulted from counsel's deficient performance. Id. at 692. If counsel's actions do not fall below an objective standard of reasonableness, however, the court need not undertake this consideration. Bell v. Evatt, 72 F.3d 421, 430 (4th Cir. 1995). Similarly, "[i]f [a] defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992) (citing Strickland, 466 U.S. at 697). To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

In the instant case, Shifflett alleges two grounds to support a finding of ineffective assistance of counsel. The court will consider each of these claims in turn.

### A. Ineffective Assistance of Counsel Claim One: Failure to Advise Properly Regarding the United States' Plea Agreements

As his first ground for relief, Shifflett claims that Bradley rendered ineffective assistance of counsel by failing to advise him properly regarding his potential plea options. The United States initially extended a plea agreement to Shifflett in July 2002, (Resp't Ex. 3), and it re-issued the same offer one year later. (Resp't Ex. 1). The plea agreement obligated Shifflett to plead guilty to two counts of the indictment (conspiracy and forfeiture) and to provide truthful information concerning his part in the drug trafficking conspiracy. In return, the United States agreed to stipulate to a certain drug weight and to recommend any additional sentence reductions as appropriate. The United States also offered the possibility of a 5K Substantial Assistance Motion if Shifflett testified at trial as a government witness.

5

Shifflett rejected the plea agreement in 2002 and again in 2003. In his § 2255 Motion and Amended Memorandum of Facts and Law, Shifflett claims that he made these decisions based on Bradley's advice to "not take the deal." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence at 5; Pet'r Am. Mem. of Facts and Law at 4,5). According to Shifflett, Bradley informed him that he had "an 85% chance of winning at a trial by jury," and following this advice, Shifflett proceeded to trial. (Pet'r Am. Mem. of Facts and Law at 4).

Based on a review of the existing court record and testimony presented at the evidentiary hearing, the court finds that Shifflett has failed to satisfy his burden under Strickland as to this claim. There is simply no credible evidence to support Shifflett's allegations or to prove that Bradley's actions fell "below objective standards of reasonableness." Strickland, 466 U.S. at 687. To the contrary, there is sufficient evidence in the record to prove that Bradley fulfilled his responsibilities as required by the Fourth Circuit's decision in Jones v. Murray, 947 F.2d 1106, 1109-1111 (4th Cir. 1991).

In Jones, the Fourth Circuit ruled on a habeas petitioner's claim that his "trial counsel rendered ineffective assistance by failing to advise him properly with regard to an offered plea agreement." Id. at 1109. As part of its analysis, the Fourth Circuit reviewed the promulgated standards of the American Bar Association. Id. Those standards, which have been "recognized by the Supreme Court as a 'guide to determining what is reasonable,'" id. (citing Strickland, 466 U.S. at 688), read as follows:

> (a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.
>
> (b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the client of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision.

6

Id. (citing III American Bar Association Standards for Criminal Justice, Standard 14-3.2 (2d ed. 1986 Supp.)). The court then denied the claim, stating that the trial attorney's actions did not violate "professional standards." Id. In coming to this conclusion, the court found that the attorney: (1) notified his client of the plea bargain; (2) explained the terms of the plea agreement; (3) advised his client of the available alternatives to proceeding to trial; (4) presented an opinion concerning the probable outcomes of both the guilt and sentencing phases; (5) advised his client of the strengths and weakness of his case; and (6) allowed his client to make the ultimate decision as to whether the deal would be accepted. Id. at 1110-11.

In the instant case, the court finds likewise that Bradley did not violate professional standards when he advised Shifflett about his potential plea options. In accordance with Standard 14-3.2(a)-(b), Bradley notified Shifflett when he received the plea bargain from the United States Attorney and met with him on multiple occasions to discuss the agreement. (Resp't Ex. 2). At the first of those meetings, based on a concern that Shifflett could not read and/or could not understand the legal particularities of the plea bargain and its guideline calculations, Bradley read the plea bargain aloud to Shifflett to ensure that he understood its potential ramifications. As suggested by Standard 14-32(b), Bradley also advised Shifflett of any alternatives available to him (e.g., proceeding to trial) and the corresponding sentence ramifications of those options as well. Then, Bradley presented an opinion concerning the strengths and weaknesses of Shifflett's case and the probable outcome of a trial. (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). In doing so, Bradley candidly warned Shifflett of the "likelihood of losing at trial." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). See also Jones, 974 F2.d at 1111 (citing II American Bar Association Standards for

7

Criminal Justice, Standard 4-5.1 ("The lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.")).

In the months that followed Bradley's first meeting with Shifflett concerning the plea agreement, Bradley kept in close contact with Shifflett and informed him of any developments in the plea negotiation process. (Resp't Ex. 2). For example, Bradley contacted Shifflett after the United States Attorney offered to restructure the plea agreement in such a way that he would get more time in exchange for his wife getting less. (Resp't Ex. 2) ("Office conference with [Shifflett] re: offered plea agreement, variations for he and (sic) Stacey") (emphasis added). After offering Shifflett his advice and assistance, Bradley followed Standard 14-3.2(b) by allowing Shifflett to make the final decision as to whether to accept the plea offer. (Resp't Ex. 10). In this regard, and as explained by the Fourth Circuit in Jones, "various [American Bar Association] Standards [place] upon counsel an affirmative duty to avoid exerting 'undue influence on the accused's decision' and to 'ensure that the decision . . . is ultimately made by the defendant.'" 947 F.2d at 1111 (citing American Bar Association Standards for Criminal Justice, Standards 4-5.1(b) & 14-3.2(b)). Here, the court finds that Bradley adhered to these standards when, after presenting the option of a plea bargain multiple times, Bradley accepted Shifflett's decision to reject the agreement on the grounds that it mandated the forfeiture of real property, (see Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 7-8) ("the first plea agreement offered by the government included a contingency for defendant to surrender and turn over an inherited parcel of land in payment of the $500,000.00 owed to the US government. . . [and] Defendant refused to surrender the property") (emphasis added), and because—at that time—Shifflett adamantly denied the charges alleged by the United States.[3]

---

[3] Shifflett testified at the evidentiary hearing that he telephoned Bradley the Friday before trial to instruct him to accept the United States' plea bargain. By that time, however, the United States had withdrawn its plea bargain

8

Accordingly, and because the court finds no other credible evidence to prove that Bradley was constitutionally ineffective in his representation of Shifflett during the plea negotiation process,[4] the court will grant the United States' Motion to Dismiss as to this claim.[5]

---

offer, (see Resp't Ex. 8), and after confirming it with the United States Attorney, Bradley informed Shifflett of this. Shifflett then questioned Bradley about the possibility of pleading guilty without a plea agreement. Bradley advised against doing this, estimating that under the Federal Guidelines Shifflett would receive a sentence between twenty-five (25) and thirty (30) years. Shifflett elected to follow Bradley's suggestion, and the court finds that this advice did not "fall below objective standards of reasonableness." Strickland, 466 U.S. at 687.

[4] In a recently filed document entitled "Memorandum in Support of Plaintiff's Motion to Vacate Sentencing Order" ("Memorandum in Support"), Shifflett alleges that Bradley purposely failed to communicate the details of the United States' plea offer to Shifflett. In particular, Shifflett claims that Bradley did not explain to him that: (1) the original plea agreement for 87 months was offered independently to Shifflett and his wife with no requirement that both of them plead guilty; (2) Stacy Shifflett could serve less than 87 months if Shifflett proceeded to trial and if Stacy Shifflett testified against her husband as a government witness; and (3) there was a possibility that Stacy Shifflett would serve only 2 years in prison instead of the original 87 months if both she and her husband pled guilty. (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 4). Shifflett further alleges that Bradley failed to communicate these details because Bradley simply thought it might be "fun to take [the case] to trial" and/or because "[t]rials consume substantially more time than guilty please" and "Bradley was charging by the hour." (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 4-5).

The court finds that there is no support in the record whatsoever for any of these allegations. To the contrary, from testimony presented at the evidentiary hearing, the court finds that Bradley fully explained—even read verbatim—the United States' proposed plea agreement to Shifflett. Bradley then met with Shifflett a second time specifically to discuss the possibility of a "family deal," whereby Stacy Shifflett could serve less time in exchange for Shifflett serving more. (See Resp't Ex. 2) ("Office conference with client re: offered plea agreement, variations for he and (sic) Stacey") (emphasis added). Shifflett categorically rejected each proposed variation of the plea agreement—and he instructed his wife to do the same—because they mandated the forfeiture of real property and because he claimed (at the time) to be innocent of the charges alleged by the United States. There is no evidence to suggest that Shifflett rejected the plea bargains because of the reasons he proffered at sentencing, i.e., because he felt that Stacy Shifflett did not "deserve" a sentence of 87 months. (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 4).

The court also notes at this time that the evidence presented by Shifflett to prove that Bradley purposely failed to communicate the details of the United States' plea bargain out of greed, i.e., because he was "charging by the hour," is entirely unconvincing. (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 5). In the Memorandum in Support, Shifflett argues that Bradley "misrepresented" his firm's relationship with Stacy Shifflett in a Motion for Judgment seeking overdue attorney's fees in Virginia State Court. (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 5; see also Pet'r Ex. 1B). Shifflett claims that Bradley committed said misrepresentations because Shifflett's remaining assets were titled in his wife's name, and thus Bradley's only method of collecting the money was to sue both of the Shiffletts jointly. While this may be true—and the court takes no position in the instant case on whether these allegations are true or not—that evidence does not bear on the question of whether Bradley purposefully failed to communicate or purposely miscommunicated the terms of the United States' plea offer. There is simply no evidence in the record—beyond Shifflett's own bare allegations—to prove that Bradley took such action, and for that reason, the court will not grant Shifflett relief based on this line of argument.

[5] Even if the court did find constitutionally deficient performance, the court would nevertheless grant the United States' Motion to Dismiss for lack of prejudice. Strickland, 466 U.S. at 692. Pursuant to Strickland's holding, a petitioner must show a reasonable probability that, but for counsel's errors, he/she would not have pled guilty. Hill v. Lockhart, 474 U.S. 52 (1985). If a petitioner must show that if not for counsel's errors, he would not have pled guilty, then the converse must be true as well: that a petitioner would have accepted a plea bargain if not for

## B. Ineffective Assistance of Counsel Claim Two: Insufficient Trial Experience

Shifflett next claims that Bradley was unconstitutionally ineffective because he "was inexperienced in federal trials." (Pet'r Am. Mem. of Facts and Law at 5). As evidence of this inexperience, Shifflett alleges that Bradley attempted to represent both Shifflett and his wife jointly, (Pet'r Am. Mem. of Facts and Law at 5), failed to "interview or contact [potential] witnesses to determine what facts or testimony they may have had to offer in presenting a defense," (Pet'r Am. Mem. of Facts and Law at 5), "refused to let [Shifflett] take the stand in [his] own defense," (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6), and failed to "present any defense on [his] behalf." (Pet'r Am. Mem. of Facts and Law at 5).

As to this second claim, the court finds that Shifflett has failed to satisfy his burden under Strickland. In coming to this conclusion, the court notes that Bradley's prior trial experience—regardless how large or small—does not establish ipso facto whether he was constitutionally ineffective in this case. Kandies v. Polk, 385 F.3d 457, 469 n. 7 (4th Cir. 2004) (vacated on other grounds by Kandies v. Polk, 545 U.S. 1137 (2005)); see also Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("[A]n attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases. 'Whether the defendant has been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work.'") (citations omitted). To the contrary, "[w]hen considering an ineffective assistance of counsel claim, the attorney's actual performance is examined, rather than his or her experience, which is an indicator of the attorney's likely performance." Kandies, 385 F.3d at 469

---

counsel's errors. Here, there is no evidence in the record that Shifflett would have accepted the government's plea offer in the absence of counsel's alleged ineffectiveness. To the contrary, Shifflett's own sworn statements in his § 2255 Motion show that he was categorically opposed to entering into any plea agreement(s) that involved the forfeiture of his real property, something which the government insisted upon in its plea agreements.

n. 7.[6] In the instant case, Shifflett has failed to prove that Bradley's actual performance fell below objective standards of reasonableness and/or that Shifflett was prejudiced in any manner.

For example, Shifflett claims that Bradley was constitutionally ineffective because he attempted to represent both Shifflett and his wife Shifflett jointly. (Pet'r Am. Mem. of Facts and Law at 5). There is no evidence in the record to prove, however—and Shifflett does not even allege—how he suffered any prejudice from Bradley's brief, and unsuccessful, attempt to represent both defendants. At best, Shifflett claims that Bradley's actions were "unethical and improper." (Pet'r Am. Mem. of Facts and Law at 5). Such bald accusations are unpersuasive to the court when United States Magistrate Judge B. Waugh Crigler held a hearing on the issue on April 11, 2003, and after hearing argument, granted a motion to substitute Bradley only for Shifflett's court-appointed attorney, Kerry Armentrout. (USA v. Perez, et al, No. 5:02-cr-70019-jct-10, Docket No. 139, 140). The court never relieved Roland Santos as counsel of record for Stacy Shifflett, and Santos continued to represent her from the date of his appointment through her sentencing. Bradley and Santos met on several occasions to discuss the United States' evidence against both Shiffletts, but there is no indication that the meetings created a conflict of interest and/or that Scott Shifflett was somehow prejudiced as a result of those meetings. In the absence of such evidence, the court must deny this ground for relief.[7]

---

[6] Even so, it is clear to the court in the instant case that Bradley had sufficient trial experience before he undertook the representation of Shifflett. Bradley had practiced as an assistant public defender for the Virginia State Courts for eight years before moving into private practice, and during that career Bradley had tried over one hundred (100) criminal cases, some of which were at the federal level.

[7] The court notes that this is not a "Sixth Amendment context" under which it should presume prejudice. Strickland, 466 U.S. at 692. "Such contexts include (1) a complete denial of the assistance of counsel, (2) government interference with counsel's performance, and (3) the existence of an actual conflict of interest between the defendant and counsel." United States v. Escamilla, 85 Fed. Appx. 666, 672-73 (10th Cir. 2003). In the instant case, none of these circumstances exist, particularly an "actual conflict of interest between the defendant and counsel." Id. Based on testimony presented at the evidentiary hearing, the court finds that Bradley did not "actively represent[] conflicting interests" at any time, and Shifflett has not proven by means of other evidence that "a conflict of interest actually affected the adequacy of his representation." Cuyler v. Sullivan, 446 U.S. 335, 349 (1980).

11

Shifflett also claims that Bradley was ineffective because he failed to "interview or contact [potential] witnesses to determine what facts or testimony they may have had to offer in presenting a defense." (Pet'r Am. Mem. of Facts and Law at 5). In his most detailed account, Shifflett avers that the unnamed witnesses would have testified that Shifflett was a heavy user of methamphetamine. Shifflett argues this evidence would have "reasonably . . . persuaded the jury" that his drug purchases were "predominately for himself," and as a result, the jury would have "found him guilty of distributing a lesser amount." (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 2). Shifflett also claims that other unnamed witnesses would have testified that Sylvia Perez, a government witness, had stated that "she would say and do anything to reduce her jail sentence." (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 2). According to Shifflett, this testimony would have "cast doubt on her credibility," and combined with other evidence, would have created "a substantial probability that a different outcome at trial would have been obtained." (Mem. in Supp. of Pl.'s Mot. to Vacate Sentencing Order at 2).

Shifflett's generalized description of these unnamed witnesses' testimony is insufficient, by itself, to prove prejudice under Strickland. See Miller v. Johnson, 2007 U.S. Dist. LEXIS 42469 at * 74 (W.D. Va. June 12, 2007). Shifflett has neither produced the identities of the witnesses nor proffered any "specific affirmative showing of what the testimony would have been." Miller v. Johnson, No. 7:06-CV-00611, 2007 U.S. Dist. LEXIS 42469, at * 74 (W.D. Va. June 12, 2007) (emphasis added). There have been no affidavits filed with the court, and Shifflett failed to call these witnesses to testify at the evidentiary hearing.[8] Without additional

---

[8] Based on other evidence presented at the evidentiary hearing, the court has its doubts about whether the unnamed witnesses would have agreed to testify in court, and if they had, whether there is a "reasonable probability" that their testimony would have made the result of the proceeding different. Strickland, 466 U.S. at 694. According to Roland Santos' written notes, Scott and Stacy Shifflett brought potential witnesses to one of their meetings with Santos so he could determine their credibility and usefulness. (Pet'r Ex. 8B). The notes further indicate, however, that Santos determined that the witnesses' testimony would be "horrible" as they were "unwilling to be specific

12

evidence to prove that these unnamed witnesses would have testified on Shifflett's behalf if they had been asked to do so and a specific proffer of what, exactly, the witnesses would have testified, it is impossible for the court to determine whether there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Accordingly, the court must deny this second ground for relief under this claim. See Miller, 2007 U.S. Dist. LEXIS 42469, at * 74 (a failure to proffer "specific affirmative showing of what the [missing witnesses'] testimony would have been" is "fatal to [petitioner's] claim) (emphasis added); see also Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed"); Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'") (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)).

Finally, Shifflett claims ineffective assistance of counsel because Bradley "refused to let [Shifflett] take the stand in [his] own defense." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6). Shifflett contends that because of Bradley's refusal, he was prevented from "offer[ing] the defense needed to win the case." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6). The court finds this characterization of the facts to

---

about the details." (Pet'r Ex. 9B). Santos also stated that the potential witnesses seemed to "absolutely fr[ee]ze up when they realized that they could be exposed to criminal prosecution." (Pet'r Ex. 9B).

13

be patently false. According to the evidence in the record, Bradley did not prohibit Shifflett from testifying on his own behalf; rather, Bradley instructed Shifflett that he could not take the stand and commit perjury. The need for this advice arose when Shifflett confessed to Bradley only days before trial that he had indeed sold controlled substances as alleged in the indictment. Up to that point in the proceedings, Shifflett had adamantly denied such claims. After due consideration of this admission, Bradley telephoned Shifflett and stated that "he couldn't let him commit perjury." (Resp't Ex. 17). Bradley further explained that if Shifflett decided to take the stand, he would likely be forced to admit during cross-examination to selling drugs, "essentially stipulating to a guilty verdict." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley)). To avoid this outcome, Bradley advised Shifflett that he had three options: (1) he could refrain from testifying entirely; (2) he could testify truthfully that he sold controlled substances, but clarify that it was a lesser amount than alleged; or (3) he could attempt to revive the plea deal with the United States.[9] (Resp't Ex. 17). Bradley gave Shifflett an hour to think over the options, and he told Shifflett that the "ultimate determination" as to whether Shifflett testified was "[Shifflett's] and [Shifflett's] alone." (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley); Resp't Ex. 17).

The court finds that Bradley's advice regarding this matter is of "the type of tactical decision that cannot be challenged as evidence of ineffective assistance." Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983), cert. denied, 464 U.S. 1064 (1984). Even if Shifflett could challenge Bradley's advice as ineffective assistance of counsel, however, the court nevertheless also finds that Bradley's conduct did not fall "below objective standards of reasonableness." Strickland, 466 U.S. at 687. In coming to this conclusion, the court notes that "[w]hatever the

---

[9] As mentioned above, Bradley took steps in an attempt to revive the plea agreement with the United States. However, the United States Attorney informed him during a telephone conversation that the plea agreement was no longer an option.

14

scope of a constitutional right to testify, it is elementary that such a right does not extend to testify falsely." Nix v. Whiteside, 475 U.S. 157, 173 (1986) (emphasis in original). Therefore, when Bradley advised Shifflett that he could either testify truthfully or not testify at all, this advice "deprive[d] [Shifflett] of neither his right to counsel nor the right to testify truthfully." Id. at 173-74 (emphasis added). Furthermore, Bradley instructed Shifflett that the ultimate decision as to whether he waived his right to testify was his (Shifflett's). (Resp't Motion to Dismiss at Attach. (Aff. of Roy D. Bradley); Resp't Ex. 17). This advice properly ensured that Shifflett's fundamental constitutional right would be waived "only by the defendant, not by his counsel," Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997), and the court finds that Shifflett made an informed and voluntary decision when he communicated to Bradley that he would not take the stand in his own defense. Therefore, the court must deny this third ground for relief and grant the United States' Motion to Dismiss as to Shifflett's second claim.

## IV.

In sum, the court finds that Shifflett has failed to offer sufficient evidence to support either of his claims of ineffective assistance of counsel. Accordingly, the court will grant the United States' Motion to Dismiss (Docket No. 12) and deny Shifflett's Motion to Vacate, Set Aside, or Correct Sentence (Docket No. 1). An appropriate order will be entered this day.

Shifflett is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the circuit court of appeals or this court issues a certificate of appealability pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Shifflett has failed to demonstrate "a substantial showing of the denial of a constitutional right," and thus this court declines to issue any certificate of appealability pursuant

to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Shifflett intends to appeal and seek a certificate of appealability from the Circuit Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Final Order to counsel of record for the Petitioner and Respondent.

ENTER: This 22nd day of January, 2009.

James C. Turk
Hon. James C. Turk
Senior United States District Judge